# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| CURTIS DARGIN | CIVIL ACTION NO. 08-0424 |
| VS. | SECTION P |
| TIM WILKINSON, WARDEN | JUDGE DOHERTY |
| | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Louisiana prisoner Curtis Dargin filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on March 26, 2008. Petitioner attacks his 2003 armed robbery conviction entered in the Twenty-Seventh Judicial District Court for St. Landry Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** in accordance with the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

## STATEMENT OF THE CASE

Petitioner was charged with armed robbery. His first trial ended in a mistrial on December 18, 2002. The motion for mistrial was made by petitioner's trial counsel in response to the testimony of two of the State's witnesses who mentioned prior bad acts

committed by the petitioner. [rec. doc. 1-4, pp. 1-41[1]]. Prior to retrial, petitioner filed a

motion to quash alleging that retrial would violate the prohibition against double jeopardy

codified at La. C.Cr.P. art. 591. The motion was denied [2] and the case proceeded to trial.

[doc. 1-4, p. 44].

At the re-trial on August 20, 2003, the jury returned a guilty verdict. On October

24, 2003, petitioner was sentenced to serve twenty-five years at hard labor. Petitioner

filed a timely *pro se* motion to reconsider sentence. A hearing on petitioner's motion was

held on January 23, 2004, and, at its conclusion, the motion was denied. [*Id*.; rec. doc. 1-

5, p. 1].

Petitioner did not file a timely motion for appeal. However, on May 24, 2004,

petitioner filed a pleading in the district court seeking an out-of-time appeal. The district

court granted relief; petitioner's lapsed appeal rights were reinstated, and appellate

---

[1] In her direct testimony, the victim identified the petitioner as the perpetrator of the crime. She was asked, "you said you knew him when he walked in the store before the robbery. How did you know this person?" To which, she responded, "When I worked in Grand Coteau at the Beau Chene Truck Stop he'd come in a lot and talk to some of the girls there, and he was from around the area." The prosecutor then asked, "So you knew him before this date when he came in the store?" And she replied, "Yeah, one time he stole a twelve pack of beer or whatever from the store." [rec. doc. 1-4, p. 1]. Counsel's motion for a mistrial at that point in the trial was denied. [rec. doc. 1-4, p. 4].

Later in the trial, one of the investigating officers testified how the petitioner was developed as a suspect. He was asked, "So you learned through the investigation that the defendant was in fact from the Sunset area?" And he responded, "Well, I knew that previously I had worked an accident where Mr. Dargin was the suspected driver in the vehicle. He had ran into an off-duty sheriff's deputy's vehicle and fled the scene." [rec. doc. 1-4, p. 6]. Counsel's second motion for mistrial was then granted. [rec. doc. 1-4, p. 7].

[2] On direct appeal, the Third Circuit Court of Appeals reviewed the transcript of the hearing on the Motion to Quash and made the following observations, "Sergeant LeBlanc testified that he and other witnesses had met with the prosecutor prior to the trial and they were instructed not to mention any other crimes in their testimonies. When asked why he mentioned the other offense, Sergeant LeBlanc responded that he did not realize that a traffic accident would be a crime. Sergeant LeBlanc affirmed that the only way he knew the Defendant was from prior criminal activity. Captain Mark Guidry testified that he too recalled meeting with the prosecutor and being instructed that past criminal activity could not be brought up during testimony." [rec. doc. 1-4, p. 47].

counsel was appointed to represent the petitioner. [*Id*.; rec. doc. 1-4, p. 44].

Having discovered no non-frivolous issues or rulings supporting the appeal, court-appointed appellate counsel petitioned the court for permission to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).[3] Petitioner filed a *pro se* brief arguing the following assignments of error: (1) double jeopardy, (2) insufficiency of the evidence, (3) due process violation when trial proceeded in petitioner's absence; and (4) ineffective assistance of counsel. On February 9, 2005, the Third Circuit granted permission for court-appointed counsel to withdraw, addressed the merits of petitioner's *pro se* assignments of error,[4] and affirmed petitioner's conviction in an unpublished opinion. *State of Louisiana v. Curtis Dargin*, 2004-01207 (La. App. 3 Cir. 2/9/2005), 895 So.2d 82 (Table). [rec. doc. 1-4, pp. 42-58].

---

[3] *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (When appointed appellate counsel has determined that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, he may file a brief establishing those facts and requesting permission of the court to withdraw from the case).

[4] With regard to the *Anders* motion, the court noted, "this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument and the transcripts . . . In our review of the transcripts contained in the record, we found no rulings which would support an arguable basis for appeal. Counsel has mentioned several issues of which the Defendant has expressed concern, none of which, according to counsel, support reversal of the Defendant's conviction and sentence. We have reviewed these issues and we agree." [rec. doc. 1-4, p. 45].

The court also addressed Assignments of Error 1 (double jeopardy) and 4 (ineffective assistance of counsel) as follows: "The record does not support Defendant's assertion that the responses were intentionally elicited by the prosecutor to provoke the Defense to move for a mistrial. Thus, we find the trial court did not abuse its discretion in denying the motion to quash." [rec. doc. 1-4, p. 49]. "Finally, the Defendant claims his attorney presented a 'bogus theory' of defense to the jury. The Defendant, offering no further argument in support of this claim, fails to explain how the defense presented was 'bogus' or what alternative theory of defense would have prevailed. Thus, we find this claim has no merit." [rec. doc. 1-4, p. 56].

On some unspecified date, petitioner submitted a *pro se* application for writs to the Louisiana Supreme Court. [rec. doc. 1-5, pp. 4-18]. Therein, petitioner argued a single assignment of error: "Retrial of defendant on the single count of armed robbery is in violation of the double jeopardy clause. LSA C.Cr.P. Art. 770(2)." [rec. doc. 1-5, p. 8]. On September 1, 2006, the Louisiana Supreme Court denied writs without comment. *State of Louisiana ex rel. Curtis J. Dargin v. State of Louisiana*, 2006-0493 (La. 9/1/2006), 936 So.2d 198. [rec. doc. 1-5, p. 3]. Petitioner did not seek further review in the United States Supreme Court. [rec. doc. 1, ¶ 6(d)].

On November 2, 2006, petitioner filed a *pro se* application for writs in the Twenty-Seventh Judicial District Court raising a claim of ineffective assistance of counsel based on trial counsel's "bogus" defense theory at trial. On November 29, 2006, the trial court denied relief and provided written reasons for judgment.[5] On January 4, 2007, petitioner filed a writ application in the Third Circuit Court of Appeals. On March 8, 2007, that court denied relief finding "no error in the trial court's ruling. Relator's application for post-conviction relief is repetitive. La. Code Crim. P. art. 930.4." *State of Louisiana v. Curtis J. Dargin*, KH 07-00004 (La. App. 3 Cir. 3/8/2007). [rec. doc. 1-5, p. 2].

---

[5] In denying relief, the court noted, "In the Court of Appeal decision rendered on February 9, 2005, the Court addressed Defendant's claims of ineffective assistance of counsel and found that his claim that his attorney presented a 'bogus' theory of defense had no merit and that assignment of error was denied. Based upon a thorough review of the record, this Court recognizes that the defendant's application is procedurally barred in that this defendant has presented this same claim for relief in his appeal . . . This Court considers this claim to be repetitive and it shall not be considered." [rec. doc. 1-5, p. 1].

On March 21, 2007, petitioner filed a *pro se* writ application in the Louisiana Supreme Court. [rec. doc. 1-5, pp. 20-34]. Therein, petitioner argued that counsel was ineffective because she presented "fabricated testimony that [petitioner] had given to her about the facts of this case." According to petitioner, counsel, who had access to the District Attorney's file prior to trial, should have seen and understood "the fabrications [petitioner] was trying to place in front of her." [rec. doc. 1-5, p. 23].[6] On December 14, 2007, the Supreme Court denied writs finding the claim repetitive and citing L.C.Cr.P. article 930.4(D) as the basis for its decision. [rec. doc. 1-5, p. 19]; *State of Louisiana ex rel. Curtis J. Dargin v. State of Louisiana*, 2007-0685 (La. 12/14/2007), 970 So.2d 525.

Petitioner's undated pleadings were mailed to this court on March 25, 2008 [rec. doc. 1, p. 9] and received and filed on March 26, 2008. Petitioner argues two claims for relief: (1) Double jeopardy and (2) Ineffective assistance of counsel.

## LAW AND ANALYSIS

### *Rule 4 Considerations*

Rule 4 of the Rules Governing § 2254 Cases authorizes the district court to examine and dismiss non-meritorious and frivolous *habeas corpus* petitions. *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir.1999). Thus, it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by

---

[6] Petitioner prepared a supplemental brief for filing in the Louisiana Supreme Court [rec. doc. 1-5, pp. 35-48]; however, by his own admission he apparently did not file the brief. [rec. doc. 1-5, p. 4].

ordering an unnecessary answer.[7] *Kiser*, 163 F.3d at 328. The instant petition for federal

*habeas corpus* relief is non-meritorious and accordingly should be dismissed, pursuant to

Rule 4, for the reasons that follow.

### Standard of Review

This *habeas* petition was filed on March 26, 2008; therefore the standard of review

is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective

Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000);

*Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[8] AEDPA substantially restricts the

scope of federal review of state criminal court proceedings in the interests of federalism,

comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir.

2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)

and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[9]

(noting that AEDPA "placed a new restriction on the power of federal courts to grant

---

[7]Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." The Advisory Committee Notes following Rule 4 state that " it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

[8]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[9]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . . ."

*Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;  *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness.  *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such factual determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.*; 28 U.S.C. § 2254(e)(1). Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000). *See also Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir.2001) ( "Unless rebutted by clear and convincing evidence, a state court's determination of a factual issue shall be presumed to be correct. The presumption [that a state *habeas* court's factual findings are correct] is particularly strong when the state habeas court and the trial court are one and the same.").

**I. Double Jeopardy**

In his first claim for relief, petitioner argues that his retrial violated the prohibition against double jeopardy. Specifically, he claims that in his first trial, the prosecutor intentionally provoked a mistrial by eliciting other crimes evidence from the victim, Catherine Speyer, and Officer Greg Leblanc, thereby prohibiting his retrial. Speyer testified that she knew Dargin prior to the robbery because he would come to the store where she worked a lot and talk to the girls in the store. Then, in response to the prosecutor's statement, "So you knew him before this date when he came in the store?", Speyer responded, "Yeah, one time he stole a twelve pack of beer or whatever from the

store." [rec. doc. 1-4, p. 1]. After explaining that he knew where Dargin was staying and that he was from Sunset, in response to the prosecutor's statement, "Okay. So you learned through the investigation that the defendant was in fact from the Sunset area?", Officer Leblanc stated, "Well, I knew that previously I had worked an accident where Mr. Dargin was the suspected driver in the vehicle. He had ran into an off-duty sheriff's deputy's vehicle and floed the scene." [*Id.* at p. 5-6].

Petitioner's double jeopardy claim was adjudicated on the merits by the District Court and thereafter by the Third Circuit Court of Appeals on direct review, and therefore the deferential standard of review outlined above is applicable.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982) (footnote omitted). Of course, when a mistrial is declared at the request of the defendant, the Double Jeopardy Clause does not prohibit retrial of that defendant. *Id*. Nevertheless, "[t]he Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). In other words, if the prosecutor's conduct "is intended to 'goad' the defendant into moving for a mistrial", a defendant may "raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089. Thus, double

jeopardy will bar a second prosecution only if the facts and circumstances show that the

prosecutor's conduct was "intended to provoke a motion for mistrial." *Kennedy* 102 S.Ct.

at 2089 and 2091.

A finding that the prosecution's conduct did not amount to intentional misconduct

is a finding of fact. *Kennedy,* 102 S.Ct. at 2089. Under the applicable standard of

review, the state court's factual findings are presumed to be correct. 28 U.S.C.

§ 2254(e)(1). Thus, in order to obtain *habeas* relief on the ground that the state court's

decision was based on an "unreasonable determination of the facts in light of the evidence

presented in the State court proceeding," the petitioner must rebut by clear and

convincing evidence the presumption that the state court's factual findings are correct.

*See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

Here, both the district court and the court of appeals concluded that the responses

of the witnesses at petitioner's first trial were not deliberately elicited by the prosecutor.

Further, the court of appeals concluded that the "witnesses' answers were not responsive

to the questions posed by the prosecutor." Finally, the court of appeals concluded:

"Sergeant LeBlanc testified that he had been instructed by the prosecutor not to mention

any other crimes by the Defendant. Although the State did not discuss at the hearing

whether the victim was also instructed, her response was non-responsive to the question

posed by the prosecutor. The record does not support Defendant's assertion that the

responses were intentionally elicited by the prosecutor to provoke the Defense to move

for a mistrial." *State v. Dargin*, KA 04-1207 (La. App. 3 Cir. 2/9/2005) at pp. 5-6. [rec. doc. 1-4, pp. 48-49].

These findings of fact are supported by the transcript of the witnesses' testimony cited above. [rec. doc. 1-4, pp. 1-6]. The State courts found that the responses of the witnesses were not deliberately elicited by the prosecutor and this finding of fact is presumed correct. Petitioner has not rebutted the presumption of correctness of this finding of fact and therefore he is not entitled to relief on his double jeopardy claim.

## II. Ineffective Assistance of Counsel

In his second claim for relief, petitioner complains that his counsel rendered ineffective assistance by presenting false alibi evidence. Specifically, he argues that the attorney he retained to represent him at the second trial was ineffective because she "knowingly aided him and knowingly assisted him in conduct that is proven to be illegal and unappreciative in our judicial system." He further contends, that his attorney's "insistency to present and/or allow false evidence in a court of law, then to base her defense around this false evidence" amounted to ineffective assistance. [doc. 1-3, p. 19].

A similar claim was raised by petitioner in his *pro se* brief on direct appeal. According to the court of appeals, petitioner claimed that his attorney "presented a 'bogus theory' of defense to the jury." *State v. Dargin*, KA 04-1207 (La. App. 3 Cir. 2/9/2005) at p. 9. In addressing the merits of this claim, the court noted, "The Defendant, offering no further argument in support of this claim, fails to explain how the defense presented

was 'bogus' or what alternative theory of defense would have prevailed. Thus, we find this claim has no merit." *State v. Dargin*, KA 04-1207 (La. App. 3 Cir. 2/9/2005) at p. 12.

As noted above, petitioner did not argue this claim before the Louisiana Supreme Court on direct review. [rec. doc. 1-5, pp. 4-18]. Thus, the claim was never properly and timely presented to the Louisiana Supreme Court on direct review for purposes of exhaustion.

Petitioner raised a similar claim in his application for post-conviction relief filed in the district court. The district court refused to reach the merits of the claim, denying it as repetitive and, thus, procedurally barred. [rec. doc. 1-5, p. 1]. Likewise, the Third Circuit, citing La. C.Cr. P. art. 930.4 declined to reach the merits of the claim also finding it to be repetitive. *State v. Dargin*, KH 07-00004 (La. App. 3 Cir. 3/8/2007). [rec. doc. 1-5, p. 2].

Not dissuaded, petitioner raised the claim again in the Louisiana Supreme Court where he accused his retained trial counsel of presenting the "fabricated testimony that [petitioner] had given to her about the facts of this case." [rec. doc. 1-5, p. 23]. He accused his attorney of failing to "understand the fabrications [petitioner] was trying to place in front of her." [*Id*.]. As in the lower courts, the Louisiana Supreme Court also declined to reach the merits of petitioner's claim finding the claim was repetitive and citing L.C.Cr.P. article 930.4(D) as the basis for its decision. [rec. doc. 1-5, p. 19]. It is therefore clear that all of the state courts, including the Louisiana Supreme Court, refused to address the merits of petitioner's ineffective assistance of counsel claim on collateral

13

review.

The last reasoned opinion of the state courts – that of the Louisiana Supreme Court – clearly and expressly denied review of petitioner's claims on procedural grounds: that the claim was repetitive under L.C.Cr.P. art. 930.4(D).  That article allows successive applications which fail to raise a new or different claim to be dismissed as repetitive.  If the last state court to reach the issue looks to its merits, then the federal courts should also review the issue on its merits.  However, if the last state court to review the claim clearly and expressly states that its judgment rests on a state procedural bar, federal *habeas* review is barred. *Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989);  *see also*, *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996).

Generally, a federal court will not review a question of federal law raised in a *habeas* petition when a state court has decided that question based upon a state ground that is both independent of the merits of the federal claim and adequate to support the judgment.  *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) *citing  Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In order to fulfill the "independence" requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar.  *Amos,* 61 F.3d at 338; *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043.  In this case, it is clear that the independence requirement is satisfied.  The Louisiana Supreme Court clearly and expressly rested its

14

judgment on the procedural bar in article 930.4(D).

"An adequate [state procedural] rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Muhleisen v. Ieyoub,* 168 F.3d 840, 843 (5th Cir. 1999) *citing Glover v. Cain*, 128 F.3d 9800, 902 (5th Cir. 1997); *Stokes v. Anderson,* 123 F.3d 858, 859 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). However, "an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate [because] after all, 'regularly' is not synonymous with 'always' and 'strictly' is not synonymous with 'unanimously.'" *Amos*, 61 F.3d at 342 (5th cir. 1995). Decisions of the Louisiana courts indicate that article 930.4(D) is regularly applied to bar applications for post-conviction relief which fail to raise new or different claims.[10] Thus, the undersigned concludes that it is the intent of Louisiana state courts to apply article 930.4(D) regularly and strictly to claims factually similar to those raised by petitioner herein.

For this reason, review of petitioner's ineffective assistance of counsel claim is procedurally barred.

---

[10] *See State ex rel Poullard v. State*, 1999 WL 805702 (La. 1999); *State ex rel Tucker v. State*, 1999 WL 781035 (La. 1999); *State ex rel Lias v. State*, 1999 WL 781053 (La. 1999); *State ex rel Lane v. State*, 1999 WL 786821 (La. 1999); *State ex rel Waters v. State*, 1999 WL 688084 (La. 1999); *State ex rel Donaldson v. State*, 1999 WL 688095 (La. 1999); *State ex rel Lay v. State*, 1999 WL 693809 (La. 1999); *State ex rel Smoot v. State*, 1999 WL 693854 (La. 1999); *State ex rel Impastato v. State*, 1999 WL 511197 (La. 1999); *State ex rel Jackson v. State*, 1999 WL 511200 (La. 1999); *State ex rel Johnson v. State*, 1999 WL 511221 (La. 1999).

However, even if the claim is not procedurally defaulted, petitioner's claim is nevertheless without merit. Review of the trial transcript supplied by petitioner reveals that at the conclusion of Captain Guidry's testimony, the State rested its case-in-chief and petitioner and his attorney conferred for a short period of time. At the conclusion of their conference, counsel called petitioner to testify. She asked petitioner twelve questions and concluded her direct examination of petitioner with "Did you commit the act of armed robbery against Catherine Speyrer on July 26?" To which petitioner responded, "No, Ma'am." [rec. doc. 1-4, p. 9]. Counsel presented no "bogus" alibi defense as alleged by petitioner; she merely gave him the opportunity to profess his innocence before the jury.

This issue of the "bogus" alibi and the presence of Ms. Darbonne, the "bogus" alibi witness at trial, was apparently first revealed to petitioner's second trial counsel during a chambers conference which arose in response to counsel's objection to the prosecution's cross-examination of petitioner. [rec. doc. 1-4, pp. 11-12]. Contrary to his assertions, it appears that the petitioner himself proffered the "bogus" alibi defense during cross-examination.

As demonstrated by the transcripts submitted herein, when cross-examination resumed following the chambers conference, petitioner was asked if he knew Ms. Darbonne prior to the date of the offense and petitioner replied in the affirmative. He was then asked, "you claim to have been with her the night that this robbery occurred and that's one reason you claim it couldn't be you that committed the robbery . . ." to which

petitioner replied, "Exactly . . . she was here for my last trial to testify and say that she was a hundred per cent sure that it couldn't be me, but she was unable to be here today." [*Id.* at p. 13].   Petitioner then elaborated on the "bogus" alibi defense by testifying that he and Ms. Darbonne were together on July 26, 2001; that she picked petitioner up from his father's home in Sunset sometime after dark; that they purchased beer and rode around and then "parked" on a gravel road; that petitioner and Ms. Darbonne remained together until dawn; that he remembered the date because it was the last time that he and Ms. Darbonne would be together since Darbonne's spouse was returning from his job off-shore; that petitioner and Ms. Darbonne met in the mall in Lafayette; that he acknowledged writing a letter to the prosecutor in advance of the first trial to advise the State of his alibi defense; that he was reminded of the alibi by Ms. Darbonne when he encountered her at the corrections facility in Basile, Louisiana; and, that he acknowledged writing several letters to Ms. Darbonne imploring her to come to court in his defense. [rec. doc. 1-4, pp. 13-28].

Defense counsel then asked a few more questions on re-direct. She asked petitioner again whether he knew Ms. Darbonne prior to July 2001.  She then asked petitioner whether Ms. Darbonne was present at the first trial to testify on his behalf, to which petitioner responded that she was.  Finally, defense counsel asked petitioner if he knew why Darbonne was not present at the trial, and he answered, "she called and said that she was unable to make it because of a work thing and she was asking me can I

please talk to the judge to get him to set it back or something where she could come . . ." [rec. doc. 1-4, p. 29].

Thus, contrary to petitioner's assertions, it appears that he, and not his attorney, was responsible for submitting "false evidence." In fact, the evidence indicates that petitioner, on his own initiative and without the knowledge of his first attorney, advised the prosecutor of his alibi defense prior to the first trial. As noted by the prosecutor during the chambers conference that occurred during petitioner's cross-examination, "previous to the prior trial in December of last year, Mr. Dargin, through his previous attorney, gave the State notice of an alibi witness, that witness being Dana Darbonne. Prior to that, Mr. Dargin actually wrote a letter to me indicating that he had someone that would testify as to his whereabouts at the time of the crime. I forwarded that letter to Mr. Marcantel [counsel during the first trial] at the time and indicated to Mr. Marcantel that it seemed like it was an alibi and that the law required them to notify us who it was and how to contact them. We did at that time . . . they notified us . . . her name . . . address and phone number. Mr. Dicapo and I interviewed Ms. Darbonne. She indicated that she was with the defendant at the time the robbery took place and it couldn't have been him because they were together and various other circumstances, which we have since learned are not true." [rec. doc. 1-4, p. 11].

Thus, at best, petitioner can fault counsel for permitting him to testify in the first instance. However, that decision was made prior to the time that counsel became aware of

Ms. Darbonne's availability for trial and the recantation of her prior testimony.

The law with respect to this claim is clear; in order to establish a claim of ineffective assistance of counsel a *habeas* petitioner must show that: (1) trial counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the deficiency element of *Strickland*, the *habeas* petitioner must show that "counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

In making this determination, the federal *habeas* court must be highly deferential to counsel's trial strategy. *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Counsel's decision on whether to have her client testify is an important aspect of trial strategy. *Id*. In examining that strategy, courts must be mindful that "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight."*Robinson v. Johnson*, 151 F.3d 256, 261 (5th Cir. 1998). Counsel's decision, to permit petitioner to state his innocence to the jury, was a reasonable trial strategy at the time it was made and petitioner's claim to the contrary is unsupported by the record.

Further, even if the decision to allow petitioner to testify was flawed, petitioner cannot prevail because he has not shown how this decision prejudiced his defense. To demonstrate prejudice, the *habeas* petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner has not shown that "but for" the presentation of the allegedly "bogus" alibi defense, he would have been acquitted.

Indeed, petitioner admits that the victim identified petitioner at trial as the individual who robbed her [rec. doc. 1-3, p. 3], and he has alleged no alternative defense that if presented, would have resulted in his acquittal. Petitioner, by his own admission, concocted a false alibi and enlisted the services of Ms. Darbonne to assist him in the presentation of this lie. In short, the pleadings and exhibits submitted by petitioner establish that petitioner's ineffective assistance of counsel claim is clearly without merit and subject to dismissal pursuant to Rule 4. Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** in accordance with the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party

may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Signed in Chambers, Lafayette, Louisiana, on November 25, 2008.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE